UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KYRELL R. ALONZO,

     Petitioner,                     Case No. 2:21-CV-10587

v.                         UNITED STATES DISTRICT COURT JUDGE

                             GERSHWIN A. DRAIN
BRYAN MORRISON.

     Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS* [#1, #13]

## I. INTRODUCTION

Petitioner Kyrell R. Alonzo, confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for second-degree murder, Mich. Comp. Laws § 750.317, and possession of a firearm in the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b.  For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

## II. BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

This case arises from the fatal shooting of Javon Perry at a gas station on Gratiot Avenue in Detroit, Michigan. The incident was recorded by a camera at the gas station and by other cameras at nearby businesses. In the early morning hours of January 5, 2017, defendant and several companions, including Derrick Quintin Everson, Jr., arrived at the gas station. The video from the gas station shows that the group entered the gas station store and first attempted to shoplift, then purchased some items. While they were inside the store, Javon Perry arrived at the gas station and entered the store. Video shows Perry paying for gas, then waiting inside the store and watching through the window until defendant and his companions begin to get inside a gold Buick parked outside. Perry then walked to his own car and began pumping gas.

According to defendant, Everson asked another member of the group "let me see the strap, I'm 'bout to go see what's up with him." Defendant testified that this meant that Everson was asking another member of the group for a gun, and was planning to confront Perry. The video recording shows that Everson then walked over to Perry, and Perry backed away to the other side of his car, with his hands up. Then defendant approached Perry, and Perry continued to back away toward the street. The video depicts Everson removing a gun from his pocket, and loading it, while defendant began his attack on Perry, punching and kicking him and throwing him to the ground multiple times. Everson at one point joined defendant in kicking Perry.

Perry attempted to flee, running across the street. Defendant later told police that at this point, Everson fired a gunshot in the air; a witness also testified at trial that at this point she heard a gunshot. Defendant chased Perry across the street, throwing Perry to the ground repeatedly. Defendant then turned his back to Perry and began to walk away, while Everson moved close to Perry with the gun and shot Perry six times at close range. The video shows that defendant, though still quite close to the men, did not turn around or otherwise react to the gunshots fired immediately behind him. When Everson finished shooting, he and defendant ran back across the street to the gas station, and left in the

2

same vehicle they arrived in. Perry died shortly thereafter from the bullet wounds, several of which were to his face.

Defendant was charged with first-degree premeditated murder and felony-firearm.[1] Defendant's first trial resulted in a mistrial, and defendant was thereafter retried. The jury found him guilty of the lesser included offense of second-degree murder, as well as felony-firearm.

*People v. Alonzo*, No. 341973, 2019 WL 3713881, at \*1 (Mich. Ct. App. Aug. 6, 2019), *leave denied*, 505 Mich. 995, 939 N.W.2d 260 (2020).  Petitioner's conviction was affirmed. *Id.* at \*5.

Petitioner filed a petition for a writ of habeas corpus, seeking habeas relief on the claims that he raised in the state courts on his direct appeal.  The petition was held in abeyance so that Petitioner could return to the state courts to exhaust additional claims. ECF No. 10.

Petitioner filed a state post-conviction motion for relief from judgment with the state trial court, which was denied. ECF No. 21-25; ECF No. 21-27; *People v. Alonzo,* No. 17-000718-02-FC (Wayne Cnty. Cir. Ct., Oct. 5, 2022), *reconsideration denied*, No. 17-000718-02-FC (Wayne Cnty. Cir. Ct., Mar. 14, 2023). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Alonzo*, No. 366977 (Mich. Ct. App. Nov. 7, 2023), *leave denied*, 513 Mich. 1074, 5 N.W.3d 29 (2024), *reconsideration denied*, 513 Mich. 1167, 7 N.W.3d 824 (2024).

---

[1] Everson pleaded guilty to second-degree murder and felony-firearm. (Footnote original).

This Court subsequently reopened the case and permitted Petitioner to file an amended petition. In his original and amended petitions, Petitioner alleges the following:

I. Alonzo was denied due process and is entitled to habeas relief where his convictions were not supported by sufficient evidence of guilt.

II. Alonzo was denied due process where the trial court admitted prejudicial and irrelevant photographic evidence.

III. Alonzo was denied due process and is entitled to habeas relief where the prosecutor improperly allowed false video evidence to be admitted at trial through its police witness, thus misleading the jury and perpetrating a fraud upon the court.

IV. Alonzo was denied due process and is entitled to habeas relief where the trial court judge erroneously instructed the jury and used a faulty verdict form.

V. Alonzo was denied the effective assistance of trial counsel based on counsel's handling of the video evidence and counsel's failure to challenge the scoring of Alonzo's offense variables (OVs).

VI. Alonzo was denied the effective assistance of appellate counsel where his attorney failed to raise his new claims for relief on direct appeal, including the prosecutorial and police-misconduct claims, the jury-instruction and verdict form claims, and the ineffective-assistance-of-trial-counsel claims.

VII. Upon remand, the case should be reassigned to a different trial judge.[2]

---

[2] For purposes of judicial clarity, the Court reorganizes the claims from Petitioner's original and amended petitions in the same fashion as Respondent did in its answer. ECF No. 20, PageID.256–57.

## III. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S.

362, 405–06 (2000).   An "unreasonable application" occurs when a "state-court

decision unreasonably applies the law of [the Supreme Court] to the facts of a

prisoner's case[.]" *Id.* at 409.   A federal habeas court may not "issue the writ simply

because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id.* at

5

411.   "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## IV. DISCUSSION

### A. Claim # 1: The Sufficiency of Evidence Claim.

Petitioner first contends that there was insufficient evidence to convict him of the charges.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970).   But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).   A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318–19 (emphasis in original). Instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

First, Petitioner contends that there was insufficient evidence to establish his identity as one of the perpetrators. Under Michigan law, "the identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

The Michigan Court of Appeals rejected the claim because Petitioner "identified himself to police as one of the perpetrators in the video recording of the

7

murder[.]" *Alonzo*, 2019 WL 3713881, at *2. Sergeant Ford, the officer to whom Petitioner made this admission, testified that the videotaped surveillance showed Petitioner assaulting the victim while his co-defendant was present. ECF No. 21-19, PageID.1344–49. Petitioner later testified at trial and admitted that he assaulted the victim, threw him to the ground, and repeatedly punched him. ECF No. 21-20, PageID.1419–23.

A witness's positive identification of a defendant from a surveillance videotape or photograph is sufficient evidence to establish the defendant's identity as the perpetrator of the crime. *See, e.g., United States v. Ayala*, 755 F. App'x 499, 509–10 (6th Cir. 2018); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004). Likewise, "an admission by the accused identifying himself as the person involved in the [crime] is sufficient to sustain a guilty verdict when the crime itself is shown by independent evidence." *United States v. Opdahl*, 610 F.2d 490, 494 (8th Cir. 1979); *see also Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000) (petitioner's identity as murderer supported in part by evidence that he confessed several times to murdering his sister); *Sok v. Romanowski,* 619 F. Supp. 2d 334, 351 (W.D. Mich. 2008) (evidence sufficient to establish petitioner's identity as armed robber where his admissions placed him at the location of the crime); *Hatchett v. Withrow*, 185 F. Supp. 2d 753, 759 (E.D. Mich. 2002) (petitioner's identity as perpetrator of the crime supported in part by his detailed confession to the crime).

In the present case, Sergeant Ford's identification of Petitioner as being the man in the videotape punching and assaulting the victim, coupled with Petitioner's own admission that he assaulted the victim, is sufficient evidence to prove his identity as one of the perpetrators. *See United States v. Shields*, 480 F. App'x 381, 386 (6th Cir. 2012) (evidence was sufficient to support defendant's convictions of kidnapping resulting in the death of the victim and carrying and using a firearm during and in relation to kidnapping; defendant was depicted in surveillance video approaching location where victim was sitting in his car, defendant was identified by eyewitness as being involved in kidnapping, and defendant himself admitted that he was present when victim was shot and killed).

Second, Petitioner argues that the evidence was insufficient to establish the elements of second-degree murder and felony-firearm. The Michigan Court of Appeals found that there was sufficient evidence to convict Petitioner of these offenses as an aider and abettor as follows:

> In this case, the evidence was sufficient to convict defendant of second-degree murder under a theory of aiding and abetting. Perry died from the gunshot wounds inflicted by Everson, and the evidence overwhelmingly establishes that defendant performed acts that assisted, and in fact enabled, Everson shooting Perry. The video recording clearly shows a joint attack. Indeed, a review of the video recording of the murder suggests that Everson may not have been able to incapacitate Perry or prevent him from escaping without the aid of defendant, who is much larger than either Perry or Everson. Knowing that Everson had a gun and planned to use it to attack Perry, defendant began the assault on Perry to incapacitate him and prevent his escape from Everson. Even after defendant heard Everson fire the gun, he

9

continued his assault on Perry until he succeeded in beating Perry to the ground, then he turned away, permitting Everson to step forward with the gun and shoot Perry six times at close range. Thus, the evidence was sufficient to convict defendant of second-degree murder under a theory of aiding and abetting.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Here, viewed in the light most favorable to the prosecution, the same evidence that supports defendant's conviction of second-degree murder under an aiding and abetting theory also supports his felony-firearm conviction. Everson used a gun to murder Perry, thereby violating the felony-firearm statute. Defendant helped him; defendant knew Everson had the gun and was planning to attack Perry, so he beat Perry to the ground, enabling Everson to kill him with the gun. The evidence was sufficient for the jury to convict defendant of felony-firearm under a theory of aiding and abetting.

*Alonzo*, 2019 WL 3713881, at \*3–\*4.

As an initial matter, the Court describes the elements necessary to prove Petitioner's offenses. Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger*, 595 F.3d 647, 654 (6th Cir. 2010) (citing *People v. Goecke*, 457 Mich. 442, 463–64, 579 N.W.2d 868 (1998)). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron*, 409 Mich. 672, 728–29, 299 N.W.2d 304 (1980)). The malice requirement applies whether the defendant is charged as a principal or as an aider

and abettor. *See Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007) (citing *People v. Kelly*, 423 Mich. 261, 273, 378 N.W.2d 365 (1985)).

The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *See Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). The test for aiding and abetting another person in committing the crime of felony-firearm is whether the defendant "procures, counsels, aids, or abets in [another carrying or having possession of a firearm during the commission or attempted commission of a felony]." *People v. Moore*, 470 Mich. 56, 679 N.W. 2d 41, 46 (2004). To prove that a defendant aided and abetted the crime of felony-firearm, the prosecution must show that the felony-firearm statute was violated by someone, that the defendant acted or encouraged, and thereby assisted in, the commission of the felony-firearm violation, and that the defendant intended the felony-firearm violation or knew that that principal intended to commit the felony-firearm violation at the time the defendant gave aid or encouragement. *Id.* at 70–71.

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;

2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 460 Mich. 750, 757–58, 597 N.W.2d 130 (1999)). To be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 1981) (citing cases).  Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568, 540 N.W.2d 728 (1995), *overruled on other grounds*, *People v. Mass*, 464 Mich. 615, 628 N.W.2d 540 (2001)).  The quantum or amount of aid or advice rendered is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*, 196 Mich. App. 341, 352, 492 N.W.2d 810 (1992).

Furthermore, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich. App. 604, 614, 493 N.W.2d 471 (1992).  The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14, 533 N.W.2d 359 (1995). An aider and abettor's state of mind may be inferred from all the facts and

circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner*, 213 Mich. App. at 568–69.

The Michigan Court of Appeals' finding that sufficient evidence supported Petitioner's convictions as an aider and abettor to the second-degree murder and felony-firearm charges was reasonable, precluding habeas relief. The video recording of the murder, which this Court viewed, shows Petitioner and Everson acting in concert to carry out a joint attack upon the victim. Petitioner himself testified that before he began the assault on Perry, he heard his co-defendant Everson ask for a gun from another person in their group. Everson indicated that he was going to use the gun to assault Perry. The video recording shows Everson confronting the victim by the gas pump. Petitioner then came up to Everson at the gas pump and began attacking Perry, brutally assaulting him and preventing him from fleeing from Everson, who followed closely after Petitioner, loading the gun. Petitioner later told police that he then heard Everson fire a shot from the gun. Petitioner continued assaulting the victim, incapacitating him and preventing his escape, before Everson approached and shot the victim six times. Petitioner by this time had turned away and was walking away, showing no surprise at the gunfire. When Everson is finished shooting, the two men ran away and got into a car together. *Alonzo*, 2019 WL 3713881, at *3.

13

In light of the evidence presented in this case, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in determining that the evidence was sufficient to convict Petitioner on an aiding and abetting theory. *See Brown v. Konteh,* 567 F.3d 191, 209–12 (6th Cir. 2009).   Moreover, when Petitioner's case is reviewed pursuant to the AEDPA's "double deference" standard, this Court is unable to state that the Michigan Court of Appeals' decision that there was sufficient evidence to convict Petitioner under an aiding and abetting theory was "so far out of line with the very general standard set forth in *Jackson v. Virginia* as to warrant granting [Petitioner] habeas relief." *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011). Petitioner is not entitled to relief on his first claim.

## B. Claim # 2. The photograph claim.

Next, Petitioner claims that he was denied a fair trial by the admission of photographs of the victim that he claims were irrelevant and prejudicial.  Petitioner objected to the admission of two photographs depicting the victim before the attack. One is a photograph of the victim in a car, and the other is a photograph of the victim in work clothes in a factory setting.  The victim's cousin testified that the pictures portrayed the victim as he generally appeared in life. Petitioner also objected to the admission of photographs taken during the autopsy, showing the injuries and bullet holes to the victim's face, head, shoulders, back, hands, and knee, and the bullet fragments that were removed from his body.

14

It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). "[S]tate and federal statutes and rules, not the Due Process Clause, ordinarily govern the admissibility of evidence in criminal trials." *Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (citing *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012)) (cleaned up). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Further, "[t]o show a due process violation under [the] AEDPA rooted in an evidentiary ruling, this court has typically required a Supreme Court case establishing a due process right with regard to that specific kind of evidence." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008), *rev'd on other grounds*, 563 F.3d 222 (6th Cir. 2009); *see also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Additionally, Petitioner's claim that the trial court improperly admitted autopsy photographs of the murder victim fails to state a claim upon which habeas

15

relief can be granted. *See, e.g.*, *Franklin v. Bradshaw,* 695 F.3d 439, 456–57 (6th Cir. 2012) (state court's determination that petitioner's right to fair trial was not violated by admission of 18 gruesome autopsy photographs of his victims that were shown to jurors on large projector screen during trial for aggravated arson, aggravated robbery, and aggravated murder, was not contrary to clearly established federal law). In particular, the introduction of graphic or gruesome photographs of a murder victim does not entitle a petitioner to habeas relief where there is some legitimate evidentiary purpose for the photographs' admission. *See, e.g.*, *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (upholding the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso; the photos were highly probative of the prosecutor's claim that the petitioner beat the victim severely and meticulously dissected her body); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003) (finding acceptable the admission of multiple photographs of the victim used by the coroner to illustrate the nature of the encounter preceding the victim's death); *Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002) (observing that "although the photographs were gruesome, they were highly probative").

The Michigan Court of Appeals rejected Petitioner's claim involving the autopsy photographs by indicating that the trial court admitted the photographs as being relevant to the elements of the charged crime of first-degree murder, including

malice, premeditation, deliberation, intent to kill, and absence of self-defense. The trial judge specifically considered each photograph and what it showed before permitting its admission. The judge allowed the admission of only a limited number of photographs. Because the photographs showing the harm inflicted were probative of whether Petitioner intended to kill Perry, both the trial court and the Michigan Court of Appeals concluded that they were relevant. *Alonzo*, 2019 WL 3713881, at *4.  In light of the relevancy of the photographs, Petitioner is not entitled to habeas relief on his claim.

### C. Claim # 7. The judicial bias/disqualification claim.

In his seventh claim,[3] Petitioner argues that on remand to the state courts, the case should be reassigned to a different judge because of allegedly biased comments that the judge made at sentencing. To the extent that Petitioner is asking this Court to order that his case be heard by a different judge upon a remand by this Court, this request is rendered moot by the denial of Petitioner's claims for habeas relief. *See, e.g.*, *Adams v. Barrett*, No. 19-cv-10778, 2019 WL 3322347, at *3 (E.D. Mich. July 24, 2019).

To the extent that Petitioner is raising an independent claim that the state court judge should have recused herself for being biased, he is not entitled to relief.

---

[3] This was Petitioner's third claim in his original petition but was renumbered for judicial consistency and clarity. *See* ECF No. 20, PageID.328 n.4.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). However, to state a claim that a judge is biased, a defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. *United States v. Lowe*, 106 F.3d 1498, 1504 (6th Cir. 1997). "Under this standard, '[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required.'" *Getsy v. Mitchell,* 495 F.3d 295, 311 (6th Cir. 2007) (quoting *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006)). A judge is required to recuse himself only where he has actual bias or "a predisposition 'so extreme as to display clear inability to render fair judgment.'" *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)). In reviewing a judicial bias claim, a federal habeas court "should employ the initial presumption that the assigned trial judge properly discharged his official duties." *See Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

Petitioner merely refers to unfavorable rulings by the judge in support of his judicial bias claim. Specifically, he points to comments she made at sentencing when denying his counsel's objection to the scoring of Offense Variable ("OV") 14

of the Michigan Sentencing Guidelines, finding that the scoring of OV 14 was justified because Petitioner had been the leader of the assault.

The Supreme Court has indicated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky,* 510 U.S. at 555. "In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required… when no extrajudicial source is involved." *Id.*

Federal courts have numerous times denied habeas relief on a judicial bias claim based solely on allegations that the judge had ruled adversely against the petitioner. *See Mason v. Burton*, 720 F. App'x 241, 242–43 (6th Cir. 2017); *cert. denied*, 586 U.S. 1076 (2019); *Hardaway v. Burt*, No. 16-1666, 2017 WL 2831020, at *4 (6th Cir. Jan. 18, 2017); *Cunningham v. Stegall*, 13 F. App'x 286, 290 (6th Cir. 2001); *Vliet v. Renico*, 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002); *Hence v. Smith*, 49 F. Supp. 2d 547, 549–50 (E.D. Mich. 1999).  Petitioner is not entitled to relief on his seventh claim.

### D. Claims # 3–6.  The procedurally defaulted claims and the ineffective assistance of appellate counsel claim.

Petitioner's remaining claims were raised before the Michigan courts for the first time on state post-conviction review.  With the exception of Petitioner's sixth claim alleging the ineffective assistance of appellate counsel, the remaining claims

are procedurally defaulted because Petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims on his appeal of right.[4]

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a

---

[4] The Court is aware that Respondent only argued that Petitioner's third and fourth claims were defaulted but did not specifically argue that Petitioner's fifth claim (alleging the ineffective assistance of trial counsel) should be procedurally defaulted pursuant to M.C.R. 6.508(D)(3). Respondent, however, indicated earlier in its answer that the Wayne County Circuit Court had denied all of the claims Petitioner raised in his post-conviction motion—including his claim that trial counsel had been ineffective—pursuant to M.C.R. 6.508(D)(3), because Petitioner had failed to show cause and prejudice for failing to raise these claims on his appeal of right. ECF No. 20, PageID.263. Notably, nothing precludes a federal court from *sua sponte* raising the issue of procedural default so long as the petitioner has had an opportunity to respond to the procedural default issue. *See Lorraine v. Coyle*, 291 F.3d 417, 426 (6th Cir. 2002). In his amended petition, Petitioner argues that appellate counsel was ineffective for failing to raise the claims in the amended petition on his appeal of right, including the ineffective assistance of trial counsel claim, and argues that appellate counsel's ineffectiveness was good cause for Petitioner failing to raise these claims on his appeal of right. ECF No. 13, PageID.124–26. Earlier, in the motion for relief from judgment that Petitioner filed with the state trial court, Petitioner argued that appellate counsel's ineffectiveness excused any procedural default of his post-conviction claims, including the ineffective assistance of trial counsel claim. ECF No. 21-24, PageID.1644–47. Because Petitioner acknowledges in his habeas petition and his state post-conviction pleadings that his ineffective assistance of trial counsel claim had not been raised on his direct appeal, and offers no arguments to excuse any default under M.C.R. 6.508(D)(3), the Court will raise the procedural default issue of this claim *sua sponte*.

"fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The Sixth Circuit has noted that "where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018). Michigan Court Rule 6.508(D)(3) provides that a court may not grant post-conviction relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

21

The Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Alonzo*, 513 Mich. at 1074. The Michigan Court of Appeals denied Petitioner's post-conviction appeal in a form order "because the defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." ECF No. 21-30, PageID.1914; *People v. Alonzo*, No. 366977 (Mich. Ct. App. Nov. 7, 2023). These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise his claims on his direct appeal as their rationale for rejecting his post-conviction appeals. Because the form orders in this case are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id.*

The Wayne County Circuit Court judge, in rejecting Petitioner's post-conviction claims, quoted verbatim M.C.R. 6.508(D) at the beginning of her opinion, including the "cause and prejudice" standard under M.C.R. 6.508(D)(3). ECF No. 21-25, PageID.1705; *People v. Alonzo,* No. 17-000718-02-FC, at *3 (Wayne Cnty. Cir. Ct., Oct. 5, 2022). The judge found that Petitioner was not entitled to relief on his post-conviction claims because he failed to show good cause for not raising these

claims on his direct appeal nor had he established that he had actually been prejudiced by these alleged errors. The judge also found that Petitioner failed to establish that he was actually innocent of these crimes so as to excuse the default. ECF No. 21-25, PageID.1706–08; *Alonzo*, No. 17-000718-02-FC, at *4–*6.

The judge's finding that Petitioner failed to establish good cause for failing to raise his post-conviction claims on direct appeal was sufficient to invoke the procedural bar contained in M.C.R. 6.508(D)(3). *See Friday v. Pitcher*, 99 F. App'x 568, 574 (6th Cir. 2004); s*ee also Reeves v. Campbell*, 708 F. App'x 230, 237–38 (6th Cir. 2017) (state court rested its judgment on procedural default as would bar Sixth Circuit from reviewing petitioner's habeas claim; state habeas court stated that petitioner's double jeopardy claim "could have been raised on appeal or in a prior motion," and cited to Michigan Court rule prohibiting court from giving relief if the defendant's motion alleged grounds for relief that could have been raised on appeal from the conviction and sentence or in prior motion). Petitioner's remaining claims are procedurally defaulted.[5]

As cause to excuse his procedural default, Petitioner also alleges ineffective assistance of appellate counsel. Petitioner, however, has not shown that appellate

---

[5] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette,* 624 F.3d at 291. However, for the reasons stated below, Petitioner is not entitled to habeas relief on this claim.

counsel was ineffective.  It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.

Moreover, "[a] brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular,'—in a verbal mound made up of strong and weak contentions." *Id.* at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel[.]" *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and

24

focusing on' those more likely to prevail." *Smith*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751–52). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that Petitioner raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed a sixteen-page appellate brief which raised the first three claims that Petitioner raised in his original petition.[6] Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons explained in depth below, none of the claims raised by Petitioner in his post-conviction motion were "dead-bang winners." Because the defaulted claims are not "dead-bang winners," Petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682–

---

[6] *See* Defendant-Appellant's Brief on Appeal, ECF No. 21-28, Page ID.1765–85.

83 (6th Cir. 2000). Because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by Petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010).

Petitioner has not demonstrated any cause for his procedural default; thus, it is unnecessary for the Court to reach the prejudice issue. *Murray*, 477 U.S. at 533. Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his defaulted claims as a ground for a writ of habeas corpus in spite of the procedural default. Notably, Petitioner's sufficiency of evidence claim (Claim # 1) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Finally, even assuming that Petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). The Court explains below why each claim fails.

Petitioner in his fourth claim alleges that the judge gave the jurors a faulty verdict form because it did not give the jurors the option of finding him not guilty

with respect to second-degree murder. Petitioner is mistaken. For the first-degree murder charge, the jury verdict form and the instructions gave the jurors the option of finding Petitioner not guilty, guilty of first-degree murder, or guilty of the lesser included offense of second-degree murder. ECF No. 21-21, PageID.1503; ECF No. 21-22, PageID.1557. The jury was provided with a "not guilty" verdict form and Petitioner was charged with two related offenses; there was no due process violation based on the submission of a single "not guilty" verdict form to the jury that incorporated a lesser-included offense. *See e.g. Odum v. Boone*, 62 F.3d 327, 332 (10th Cir. 1995); *see also Sain v. Burt*, No. 16-2576, 2017 WL 1381275, at *1 (6th Cir. Apr. 17, 2017). Petitioner is not entitled to relief on his fourth claim.

In his fifth claim, Petitioner alleges he was denied the effective assistance of trial counsel. To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

Petitioner contends his trial counsel was constitutionally deficient based on counsel's failure to (1) investigate the video recordings of the incident, (2) utilize

the video recordings in his possession at trial, (3) seek a video-analysis expert, and (4) challenge the scoring of Petitioner's offense variables (OVs). ECF No. 16-2, Am. Pet., PageID.199–207.

First, Petitioner argues that his trial counsel failed to fully investigate his case and the video evidence prior to trial. *Id.* at PageID.202–03. Petitioner argues that if trial counsel conducted a reasonable investigation, counsel would have discovered that Sergeant Ford altered the video recordings and deleted support for Petitioner's "actually innocent" defense; that is, that Petitioner was attempting to break up a fight between Everson and Perry until "Perry accosted [Petitioner] while trying to break up the two combatants." *Id*. at PageID.203.

Petitioner's claims that the prosecutor and Sergeant Ford committed misconduct or fraud with respect to the video evidence are conclusory and unsupported. Sergeant Ford compiled video recordings from four businesses that captured the murder, retained the original recordings, and then created a cut-up that depicted all relevant angles of the incident. ECF No. 21-19, PageID.1309–12. Petitioner's claim that Sergeant Ford deleted certain video evidence is false, as is Petitioner's claim that Sergeant Ford improperly altered the videos played for the jury at trial. The videos depicted all the relevant angles showing the entire transaction. At no point in the videos does the victim accost Petitioner. Instead, Petitioner confronts the victim, backing Perry up to the road before attacking him

28

completely without provocation. Video 1 at 06:50–08:40; Video 2 at 00:00–01:45.

There is no evidence supporting what Petitioner claims his trial counsel should have found through a reasonable investigation. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner is not entitled to relief on this subclaim.

Next, Petitioner alleges that trial counsel was ineffective because he "failed to utilize the recordings in his possession, [and] to inform the jury that the tape played to them had been altered from its original form, which is why [the jury] did not see Petitioner standing between the two combatants." ECF No. 16-2, Am. Pet., PageID.203. Petitioner alleges that "counsel had a copy of the original surveillance recordings, but he failed to use them to fully impeach S[ergeant] Ford's testimony." *Id.* at 204.

As noted by Respondent, Petitioner's failure-to-utilize-evidence claim is inconsistent with his previous inadequate-investigation claim. Petitioner does not explain how counsel was ineffective for failing to investigate and discover video evidence proving his innocence, yet at the same time, have that evidence in his possession but fail to use it.

In any event, counsel clearly knew Sergeant Ford preserved the original video recordings, and there were strategic reasons not to play them at trial. Sergeant Ford

testified that the cut-up video combined the relevant angles of the victim's murder from each camera so that the jury did not have to separately watch all the footage on each video. Counsel chose to rely on Sergeant Ford's cut-up video and then question him on cross-examination about his actions in compiling the video evidence, while also bringing to the jury's attention that he was the ultimate decision-maker about which parts of the video recordings made it into the final cut-up version. ECF No. 21-19, PageID.1321–23. Counsel's cross-examination had the effect of questioning whether the videos shown to the jury truly captured the entire shooting incident, whereas showing each video separately and in its entirety would not have had that same effect and could have made the jurors bored or disinterested.

More importantly, the only actual evidence supporting Petitioner's claim that he was breaking up a fight when the victim "accosted" him was Petitioner's own testimony. Petitioner testified that he approached Everson and Perry because he was trying to leave. Petitioner then explained he walked up to Perry, turned back to say something to Everson, exchanged words with Perry, and then reacted by throwing the first punch at Perry. ECF No. 21-20, PageID.1418–21. Counsel highlighted Petitioner's testimony in his closing statement. ECF No. 21-22, PageID.1523, 1531. Therefore, rather than play all the original video recordings, which do not support Petitioner's version of events and his claim of innocence, counsel reasonably chose to use the best evidence supporting Petitioner's claims: his own testimony.

Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004). Because there is no indication that these videotapes would have exonerated Petitioner, counsel was not ineffective for failing to play them in their entirety for the jury. Counsel also sought to call into question the prosecutor's case by confronting Sergeant Ford about the fact that he was the one who decided how to compile and present the various videotapes. This is a valid trial strategy that defeats Petitioner's claim. *See Searcy v. Berghuis*, 549 F. App'x 357, 362 (6th Cir. 2013) ("Where trial counsel has dealt with a problem by choosing one option over another, we do not second-guess that strategy.").

Next, Petitioner contends that trial counsel was ineffective for failing to request additional funding from the trial court to present "an expert in the field of video analysis." ECF No. 16-2, Am. Pet., PageID.204. Petitioner claims an expert could have "explained the difference between the altered-played video and the original video depicting Petitioner's intent to stop the altercation from the beginning," and could have "shed light on the subject matter involving the altered videos." *Id.* at 204–05.

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Petitioner has offered no evidence to this Court that there

was an expert in video analysis who would have testified that the videotapes of the incident had been altered or falsified. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Petitioner finally argues his trial counsel was constitutionally deficient for failing to object to the scoring of Offense Variables 1, 2, 3, 5, 6, 7, and 14 of the Michigan Sentencing Guidelines. ECF No. 16-2, Am. Pet., PageID.205–06. The record clearly demonstrates, however, that Petitioner's trial counsel unsuccessfully objected to each of those OVs. ECF No. 21-23, PageID.1574–82.  Because trial counsel did not commit the error that Petitioner alleges, Petitioner's final claim is without merit. Petitioner is not entitled to relief on his fifth claim.

Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

## V. CONCLUSION

The Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to

deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of the claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## VI. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of

habeas corpus is **DENIED WITH PREJUDICE**. IT IS FURTHER ORDERED

certificate of appealability is **DENIED**.  IT IS FURTHER ORDERED that leave to

appeal *in forma pauperis* is **GRANTED**.


Dated:  September 23, 2025             s/Gershwin A. Drain
                                       GERSHWIN A. DRAIN
                                       United States District Judge


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on September 23, 2025, by electronic and/or ordinary mail.


                              s/Marlena Williams
                              Case Manager

34